IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CARSON STEPHENS,

    *Plaintiff*,

    v.

THE CITY OF WAVERLY
And W.B FRAZIER , MAYOR,

    *Defendants.*

_____/

Civil Action No:

Judge

Magistrate

JURY DEMAND

**COMPLAINT**

Mr. Stephens had been employed by the City of Waverly for over five years when he requested time off for a serious health condition and due to his disability. The City of Waverly retaliated against Mr. Stephens for taking time off to seek treatment for his disability. When Mr. Stephens was released to return to work, Mayor Frazier and the City refused to allow him to return. When Mr. Stephens requested to speak to the Board of Aldermen, Mayor Frazier refused to allow him to attend the meetings, suspended him, and ultimately terminated him. Mr. Stephens was terminated on December 10, 2019, after the Defendant City failed to provide him notice and opportunity to be heard prior to depriving him of his constitutional rights, and the very day after his wife appeared at a Board of Aldermen meeting and stated it was illegal to refuse to return him to work. The Mayor also made disparaging statements about Mr. Stephens which cast him in a false light publicly. Defendants violated Mr. Stephens' civil, constitutional, and statutory rights, under state and federal law.

1

## PARTIES

1. Plaintiff, Carson Stephens is a citizen and resident of the City of Waverly, Humphreys County, Tennessee, and a former employee of Defendant City of Waverly.

2. Defendant the City of Waverly is a Tennessee governmental entity organized and existing under the laws of the State of Tennessee. At all relevant times, City of Waverly employed Plaintiff.

3. W.B. Frazier is a citizen and resident of City of Waverly, Tennessee and at all relevant times was an elected official, Mayor, of the City of Waverly.

## JURISDICTION AND VENUE

4. This is an action for unlawful employment practices brought under the Family and Medical Leave Act, 29 U.S.C. §2611, ("FMLA") (Count I); Tennessee Public Employee Political Freedom Act, Tenn. Code Ann. § 8-50-601 *et seq.* ("PEPFA") (Count II); discrimination on the basis of disability and retaliation for engaging in protected activity under the Tennessee Disabilities Act, T.C.A. § 8-50-103, ("TDA") (Count III); violations of substantive and procedural due process under 42 U.S.C. § 1983 ("§ 1983") (Count IV); Invasion of Privacy – False Light (Count V); and Intentional Infliction of Emotional Distress (Count VI) under Tennessee common law.[1]

5. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

## FACTS

6. Mr. Stephens was hired on or about December 2013 as an officer in the Codes Enforcement department as a Staff Accountant.

---

[1] Plaintiff timely filed a Charge of Discrimination with the EEOC alleging violations of Title VII and the Americans with Disabilities Act. He intends to amend this Complaint after those charges have been administratively exhausted.

7. In July 2015, Mr. Stephens was appointed City Recorder. Mr. Stephens reported directly to Mayor W.B. Frazier.

8. The City of Waverly has approximately 4,146 residents and is the county seat of Humphreys County. The City is governed by the Mayor who acts as the Chief Executive Officer and a 6-member Board of Aldermen, which are all elected positions.

9. The City does not have a Human Resources Department and human resources functions are performed by Mayor Frazier who outsources the administration of employee benefits to a broker.

10. The City Recorder position is akin to the Chief Financial Officer position.

11. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(h).

12. Plaintiff was qualified for his job with Defendant and performed his job duties in a competent and satisfactory manner.

13. Plaintiff had a good work history and was appointed to the City Recorder position, a promotion from Staff Accountant.

14. On or about August 2019, Mr. Stephens experienced a flare-up of his disability and sought treatment from his doctor who increased his medication.

15. Shortly following the increase in medication, Mr. Stephens experienced a dramatic increase in symptoms.

16. On or about the summer of 2019, the City of Waverly's systems had been hacked by a computer hacker and Mr. Stephens was on high alert for hacking or fraud activities. The City had moved their systems to a cloud-based system.

17. On September 15, 2019, Mr. Stephens, in his role as City Recorder and Chief Financial Officer, had received suspicious emails and decided to run a systems test. To do so, he

requested that the City bank account be temporarily suspended while he was running the test. At the conclusion of the systems test, he reinstated the bank account and notified the Chief of Police.

18. On information and belief, the Chief of Police notified Mayor W. B. Frazier of the suspension of the City bank accounts.

19. Mayor Frazier appeared at Mr. Stephens home the afternoon of Sunday, September 15, 2019, and questioned Mr. Stephens motives, raised his voice, used foul language, and threatened to fire Mr. Stephens.

20. This altercation with Mayor Frazier triggered Mr. Stephens' disability and he suffered an acute episode.

21. The next morning, he was transported to the hospital and was hospitalized overnight. Mr. Stephens' wife notified the City that he was hospitalized and unable to come to work that day.

22. He was subsequently admitted to an in-patient treatment facility. Mr. Stephens' wife kept the City informed regarding his treatment and return to work.

23. Mr. Stephens requested and received a form (FMLA WH-380-E) for his health care provider to fill out and return.

24. On September 25, 2019, Mr. Stephens' health care provider returned the FMLA certification certifying that he had been admitted to a hospital or residential medical care facility from September 17, 2109 – September 23, 2019 and requested continuous leave for that time-period.

25. On September 30, 2019, Mr. Stephens communicated to Mayor Frazier that he would be returning to work on October 2, 2019.

26. On September 30, 2019, Mayor Frazier signed the Notice of Eligibility and Rights

and Responsibilities informing Mr. Stephens that he was eligible for FMLA leave and stating that the 12 month period is calculated as "the 12-month period measured forward from the date of your first FMLA leave usage."

27. On October 2, 2019, Mr. Stephens reported back to work.

28. After he reported to work on October 2, 2019, Mayor Frazier placed Mr. Stephens on an indefinite suspension, forced him to take his personal items out of his office, and told him he would have to "beg for his job."

29. On October 7, 2019, Mayor Frazier sent an email to Mr. Stephens' health care professional asking her to verify that Dr. Kondapavaluru "did personally answer each of the questions on the form."

30. On October 9, 2019, Elisabeth Holihan of Dr. Kondapavaluru's office replied to Mayor Frazier that she did personally write out the answers, mostly for ease of the forms being "legible and easy for you read but Dr. K directed all answers and recommendations."

31. Mayor Frazier sent Mr. Stephens a letter dated October 10, 2019, with an attachment listing 12 weeks. On information and belief, this letter approved Mr. Stephens' FMLA request.

32. Mr. Stephens returned to his doctor on December 10, 2019 and received a second leave certification requesting leave until October 31, 2019.

33. On November 12, 2019, Mr. Stephens sent a detailed email to Mayor Frazier stating: "Please let this letter serve as another formal attempt to return to work." Mr. Stephens attached a Fitness for Duty form signed by Dr. Tang of the Nashville Brain Institute which stated that he was fit to return to work on November 11, 2019, with no restrictions.

34. The City of Waverly refused to return Mr. Stephens to work.

5

35. Mrs. Carly Stephens, Mr. Stephens' wife, spoke with the City Attorney and said that it was discriminatory and illegal to keep Mr. Stephens out of work. He informed her that he could not make the Mayor do anything.

36. Mr. Stephens asked Mayor Frazier to set his matter on the agenda for the upcoming December Board of Aldermen meeting. Mayor Frazier refused to do so and threatened him not to attend the meeting.

37. On December 11, 2019, the Board of Aldermen held a meeting. Mrs. Stephens and her father attended the meeting. At the meeting, Mrs. Stephens and her father pleaded with the Board to return Mr. Stephens to his job.

38. The next day after the Board meeting, Mayor Frazier terminated Mr. Stephens.

39. After his termination, Mr. Stephens was replaced by a person with less experience.

40. On June 26, 2020, Mr. Stephens filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and disability discrimination and retaliation for engaging in protected activities.

41. In the EEOC Response, the City stated that an investigation uncovered several issues with the City's finances while under Mr. Stephens charge. However, no investigation was instituted until after Mr. Stephens requested time off for his medical condition, and many, if not all, of the alleged issues happened either while Mr. Stephens was on protected leave because the City did not direct someone to handle his duties, and/or scrutinize his job performance until after Mayor Frazier had terminated Mr. Stephens and thus demonstrate pretext for discrimination and retaliation.

**Count I**
**Violations of FMLA**
**Against City of Waverly**

42. Plaintiff restates and incorporates herein the foregoing paragraphs.

43. Plaintiff was entitled to receive FMLA leave.

44. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

45. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

46. Plaintiff was entitled to receive FMLA leave to care for his serious health condition.

47. Defendant interfered with Mr. Stephens' right to take FMLA leave by not providing him the proper paperwork in a timely fashion, improperly calculated his leave allotment, by forcing him out on FMLA leave for longer than his request and certification and by improperly contacting his physician's office.

48. Defendant retaliated against Mr. Stephens for requesting FMLA leave by forcing him on FMLA for a longer period of time than required or requested, refusing to return him to work, and terminating him.

49. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff. Defendant's actions constitute interference and retaliation violations of the FMLA.

50. Defendant's conduct harmed and caused damage to Plaintiff.

51. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

### Count II
### Violation of PEPFA
### Against the City of Waverly

52. Plaintiff restates and incorporates herein the foregoing paragraphs.

53. Mr. Stephens' exercise of his right to communicate with elected and other public officials was a substantial or motivating factor in his removal from employment, his suspension, the refusal to return to him to his job, and his termination.

54. Plaintiff communicated directly with Mayor Frazier, an elected official of the City, and on several occasions complained that the City was violating FMLA and disability laws by refusing to return him to work. Mayor Frazier forbid Mr. Stephens from communicating with the Board of Aldermen.

55. Nonetheless, Mr. Stephens' wife and father-in-law attended the Board meeting of the elected Board of Aldermen and requested that they restore Mr. Stephens to his job.

56. The very next day, the City retaliated against Mr. Stephens by terminating him.

57. Defendant took disciplinary action, threatened to take disciplinary action against Mr. Stephens and eventually terminated him in violation of the PEPFA.

58. Defendant's conduct was intentional, reckless, malicious, and/or fraudulent.

59. Defendant's conduct harmed and caused damage to Mr. Stephens

## Count III
## Violation of TDA- Disability Discrimination and Retaliation
## Against City of Waverly

60. Plaintiff restates and incorporates herein the foregoing paragraphs.

61. Plaintiff was a qualified individual with a disability.

62. Defendant discriminated against Plaintiff on the basis of his disability in violation of the TDA.

63. Plaintiff was terminated because of his disability.

64. Defendant retaliated against Plaintiff for engaging in protected activity under this Act, specifically complaining about the way he was being treated after the disclosure of his disability.

65. It is the public policy and law of the State of Tennessee and federal law that employees must be able to exercise their rights under state and federal discrimination laws without fear of reprisal or penalty from an employer.

66. In violation of the TDA, Defendant retaliated against Plaintiff by removing him from employment, suspending him, refusing to return him to his employment and terminating him.

67. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

68. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

### Count IV
### Violations of 42 U.S.C. § 1983 – Deprivation of Procedural and Substantive Due Process Against the City of Waverly

69. Plaintiff restates and incorporates herein the foregoing paragraphs.

70. As described above, Defendant deprived Plaintiff of his rights to procedural and substantive due process secured by independent sources such as the City of Waverly's policies and practices, Tennessee law, and the Fourteenth Amendment to the United States Constitution, respectively, while acting under color of state law, in violation of § 1983 and the Fourteenth Amendment.

71. Defendant acted under color of law within the meaning of 42 U.S.C. § 1983. Defendant's actions as described above, deprived Plaintiff of rights, privileges and immunities provided by the United States Constitution and deprived Plaintiff of his liberty and property interests without due process of law. Plaintiff was denied a full and fair opportunity to be heard as guaranteed by the Due Process Clause of the Fourteenth Amendment. Further, Defendant's actions resulted in Plaintiff being denied a fair and impartial hearing as guaranteed by the Due Process Clause of the Fourteenth Amendment. Plaintiff has no effective means other than the judiciary to enforce his rights guaranteed to her under the U.S. Constitution.

72. Defendant's conduct was undertaken with malice or reckless disregard for or indifference to Mr. Stephens' federally protected rights.

73. Defendant's conduct harmed and caused damage to Plaintiff.

## COUNT V
### Invasion of Privacy- False Light
### Against the City of Waverly and W.B. Frazier

74. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

75. Defendant published to the Board of Alderman, and upon information and belief to others, that Plaintiff was "crazy."

76. Defendant had actual knowledge or acted in reckless disregard to the disclosure of private medical information Plaintiff was required to disclose, to the falsity of the information, and the damaging nature of the allegation.

77. Defendants' actions caused damage and continue to cause damage to Plaintiff.

## Count VI
### Intentional Infliction of Emotional Distress
### Against the City of Waverly and W.B. Frazier

78. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

79. Defendants engaged in extreme and outrageous conduct toward Plaintiff in by confronting while he was in a health crisis, sending the police to his doorstep to harass him, inhibiting Plaintiff from speaking to the Board of Aldermen, terminating him, and in making inflammatory allegations about him and his health condition.

80. Mayor Frazier's actions toward Plaintiff were intentional or reckless, outrageous, and not conduct tolerated in our society, which was intended to and did cause serious mental injury to Plaintiff.

81. Defendant Waverly's actions were intentional or reckless, outrageous, not conduct tolerated in our society, which was intended to and did cause serious mental injury.

82. Defendant intended to cause emotional distress or recklessly disregarded whether its conduct would cause emotional distress.

83. Defendant's conduct caused Plaintiff severe emotional distress.

**RELIEF REQUESTED**

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages, as available against Frazier;

6. All available damages under the PEPFA;

7. Liquidated damages;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which she may be entitled under the law.

Respectfully submitted,

*/s Heather Moore Collins*
Collins & Hunter, PLLC
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*